Opinion of Chief Justice.
Jacques Voorhees, of the county of Somerset, died in the year 1822, leaving a will, in which his wife Dinah Voorhees, and John Stryker and Elbert Stootlioff were appointed ■executors ; they all proved the will, but the personal estate •chiefly passed into -the hands of Stryker and Stoothoff. John Stryker died in the year 1820. In 1822, Elbert .Stootlioff exhibited for settlement in the Orphans’ Court an *173 account of the administration of the estate. Exceptions were filed. A reference to auditors followed. The auditors made their report, to which exceptions were taken by * Jacques Yoorhees, the .«on and one of the legatees [*14& of the deceased, and also by Elbert Stoothoff, the accounting executor. The Orphans’ Court, after hearing the parties and their evidence, altered the statement made by the auditors in several particulars, both in the charge and discharge of the account, and directed a re-statement to bo made accordingly. An account having been re-stated by the surrogate under the direction of the court, and on the principles sanctioned and adopted by them, a final decree-was passed in the term of January, 1824.
Jacques Yoorhees, the son and legatee, being dissatisfied, removed here by certiorari the decree of the Orphans’ Court,, and assigned several reasons for its reversal. Since the certiorari was returned, the legatee and plaintiff here died, the-cause was continued in the name of his administrators, and the counsel of the parties having been heard at the last term, the case no stands for our determination.
The first reason for the reversal of the decree which T shall consider, is assigned in the following words : “Because the mode in which the interest is calculated on said account is unequal and illegal.”
The personal estate of the testator, which was very large, consisted of the stock of his plantation, farming utensils, slaves, and household and kitchen furniture, of bonds and notes at interest, and of certificates of the public debt of the United States. The farming stock and utensils, the slaves and household furniture were bequeathed t'o his wife during her widowhood. The auditors in their statement make out the interest account in the following manner, which was afterwards adopted by the Orphans’ Court, with an addition not necessary to be now noticed, because not now changing the principle or rule gí computation. Upon the dividends on the government stock, payable quarterly, but received *174 by the executors semi-annually, interest was charged from the various times of receiving them up to the 1st of October, 1821. In order to ascertain what was called the active . capital, or estate producing interest, on which to raise a charge of interest, various items deemed unproductive, not necessary to be here particularly detailed, were subtracted from the amount of the inventory; and a balance was found of $9,476.32, exclusive of the government stock of which the account was separately stated in the manner just *147] *mentioned. On this sum of $9,476.32 interest at seven per centum was computed and charged from the date of the inventory for eight years and nine months until the first pecuniary legacy became due by the arrival at full age of the eldest son; when the amount of his legacy being •deducted, interest after the same rule was computed and charged until the other legacies became successively due, when they were respectively deducted. The amount of interest at the payment of the first legacy exceeded the legacy by a small sum so that the excess of interest was made productive; but the fact is here noticed for the sake of accuracy only. The rule adopted by the auditors and the Orphans’ Court was to charge against the executors simple interest only, on the amount of the estate which was productive and bearing interest; in other words, the executor is charged simply in the light of an ordinary debtor, and the account is stated in the same manner, as if it were sought to ascertain the balance remaining due for an ordinary debt, on which some payments had been made.
The rule or principle on which the account is thus stated is in my opinion radically wrong. It is wrong because it departs from the will and defeats the intent of the testator; because it produces injustice to the legatees to the gain of the executor; and because it is not supported but contradicted by the doctrine, reasoning and authority of the cases adjudged in the courts of account.
1. This mode of computation is inconsistent with the will of the testator. The will contains the following clause :— *175 ■“ And as to my personal estate, consisting of public stock and bonds, notes and book accounts, I hereby order and direct my executors hereinafter named to place and keep the .same out upon interest until my children shall come of age, and the interest yearly accruing thereon to be also put out by them on interest until the same period.” The testator then gives certain pecuniary legacies, payable as his children should respectively attain the age of twenty-one years; providing for one then in ventre sa mere ; and proceeds, “ after paying all the above legacies, if there be any residue of my estate, I give such residue to and among all my children including that my wife is now pregnant of.” The provisions of a will furnish the guide and mark out the duties of the executor. They are the lights of courts in examining his conduct and adjusting his responsibilities. In the present case the purpose of the testator *cannot be misunder- [*148 stood. One portion of his estate he places in the hands of his wife “intended” he says “as a support for her and my children and for their bringing up and education.” Another portion, that now under consideration, he sets apart to accumulate by annual accretions ; the interest yearly accruing to be put out to interest during the period ailoted for its increase. Now the duty of the executor was to adhere closely to the directions of the will. If he did so, if the interest yearly accruing was placed out at interest, annual accretions took place, of the interest on the interest accrued, invested and made capital; and with those accretions the executor should have been charged. In this account, however, he is charged with the interest yearly accruing only, without the slightest accretion and precisely as if he had not and ought not to have placed at interest, “the interest yearly accruing.” But it is said, however pointedly and clearly such directions may be given, they cannot be literally reduced to practice; in the actual transaction of business and management of an estate, it is impracticable, precisely at the close of each year to collect and forthwith invest the *176 interest on the capital stock. I am ready to admit, from observation, from information and from some actual experience, that it cannot be done with chronological exactness. Sometimes the deviation is from necessity considerable.— Nevertheless it is the duty of the executor to approximate thereto as nearly as circumstances will permit. Reasonable care and proper diligence are expected from him. Watchfulness and faithfulness ought ever to be brought to the-fulfillment of the trust. When these qualities exist, courts of account are always liberal towards the executor or trustee. When these qualities have been exercised, he will not beheld responsible for losses which prudent management could not foresee or avoid; nor will he be charged with gains which the like conduct on'his part has not realized.
2. In the second place, the mode of charging interest adopted in the account before us works much injustice to the legatees.
The fundamental principle, dictated no less by morality and practical honesty than by the law in regard to a trustee,, whether executor or administrator or guardian, or in cases of an ordinary nature, is that he shall derive to himself no-gain, benefit or advantage, by the use of the trust funds. Whatever of profit may be made, or may accrue, shall *149] belong to and become parcel of the *estate. This-rule, very scrupulously observed in the English courts where no remuneration out of the fund is allowed to the executor or trustee for his services, more readily approves itself among us, who, with better reason, allow to the trustee, of whatever name, an adequate compensation. But the mode of account adopted in the case before us, will on ■ slight inspection and scrutiny be discovered to be detrimental to the cestui que trust or legatee, and profitable to the trustee or executor. At the end of the year, or as soon as it may be collected, a sum of interest, greater or less according to-the amount of the fund, comes into the hands of the executor ; and so from year to year through the successive periods- *177 of his trustship. Now if he is to be in no wise accountable for any increase on the sums, it is very obvious that by employment in trade or by investment in public funds or in private loans, he may derive to himself an annual profit; and if the trustship continues for a number of years, for instance for the ordinary period of infancy, the advantage to the trustee will be very considerable. Let us suppose the sum of ten thousand dollars, in the hands of a trustee for twenty-one years. If he has received for the whole period simple interest only, he will have at the close, at six per cent., of principal and interest, $22,600. If he has received the interest yearly on the capital stock and forthwith invested it, he will have at the close, computing only simple interest on the sums of interest yearly received and invested, the following amounts : the capital $10,000, the annual sums of interest received on the capital, $12,600, and the simple interest for the respective periods of investment of the annual instalments of interest $7,560; making together $30,160 ; and shewing a difference of 7,560; all of which according to the rule of computation pursued in the account before us would be to the profit of the executor and not of the estate. It is not unobserved that this difference will be diminished in proportion as the receipts of interest and the investments are delayed. Some rule, however, was necessarily to be assumed in order to frame a calculation and exhibit a result; and that of exact punctuality was, for obvious reasons, taken. But it may be objected that, however plausible these things may appear in theory'and on paper, they are unattainable in fact; that such strictness would be runinous to the executor or trustee, inasmuch as in our state of society and business, punctuality of payment is rare and ^promptness of investment [*150 with adequate security not everywhere to be found. The general truth of the remark is conceded, and in my judgment, proper allowance should always be made for these difficulties in the execution of the trust. But let us in *178 order to weigh justly these considerations look somewhat at real life, and we can no where resort with more propriety and satisfaction than to the very case before us. All the original bonds or securities are not here and we have not therefore a view of the whole ground. Among the exhibits submitted to us is a bond of John PTeilson for $2,000 bearing interest from the 1st day of May, 1801, and on which are ten receipts for annual interest in as many successive years; the first a few days after the making of the inventory, two in June, one in August and the others in the month of May. On an obligation of Peter PTevius for $800, the intérest accrued on the 1st of December, and five receipts are indorsed, of these four are in December and the other in January. On another obligation of Peter Plevius bearing interest from the first of May, there are four payments indorsed, two on the first of May of succeeding years, the third on the ninth, and the fourth on the 29th of the same month. On another bond of the same person, receipts of interest are annually indorsed with nearly equal punctuality. Ruleff Pfevius, a witness examined before the Orphans’ Court, testified that he was indebted to the estate on a bond of $800 and paid the interest punctually to the executors, sometimes a little before it was due. With what regularity payments of interest on the other securities were-made we have not the means to ascertain. But these obligations as they stood in amount at the decease of the testator were more than one half of what is set down in the account as active productive capital. And upon them the annual interest appears to have been paid with commendable punctuality. What then became of the sums thus received for interest? Were'they suffered by the executors to be idle ? If so, for what reason ? Could no prudent investments be made? Were they placed out at interest ? Was an increase made upon them ? If so, to what amount ? And why should not the increase be charged against the executors ? There are no documents before us to shew what answer *179 truth would give to these enquiries. Elbert Stoothoff declared on his examination before the Orphans’ Court that “he as executor kept no account of interest, nor did he know *that the executors kept an account of interest.” [*151 No book was produced, exhibiting an account of the times and manner of the receipts and expenditure and appropriation of the money of the estate, and we may presume that none existed. These facts are not less remarkable in themselves than greatly to be regretted. And yet the upright character and fair reputation of both executors, Stryker and Stoothoff, forbid the belief of any improper concealment, or the suspicion of design or unworthy motives in the unhappy omission, or of any want of integrity and good faith in the management of the estate or the discharge of their duties.
3. The rule of interest pursued in the account is inconsistent with the principles of computation adopted in the adjudged cases to be found in the books.
The charge of interest against executors and trustees is made with much strictness in the English courts. In the early cases of the chancery hooks interest was sometimes denied and a diversity of decision and considerable uncertainty prevailed. The doctrine, however, has been long settled. When a trustee uses the trust money, in trade or by loan, he is charged with interest; so if he mingles it with his own and uses it in common; so if he suffers it to be idle when it might have been invested.
In Bennet v. Graves, 1 Vern. 197, the Lord Keeper said he thought it reasonable, executors in all cases should answer interest, if they had used the money in trade or received any interest for it, and not to turn the same to their own. private advantage; and he decreed that the defendant, an administrator, should account for interest, unless she made oath that she had kept the money by her. In Newton v. Bennet, 1 Bro. C. R. 359, soon after the decease of the testator, the executor called in several bond *180 debts bearing interest, and was himself indebted by bond or note bearing interest, and as appeared, he had used the money in his trade. The chancellor said, “When the executor did not apply.the money to the uses of the will, or bring it hither, I must take it that he kept it for the purpose of making advantage of it in the way of his trade.” “ He has not shewn any reasonable cause for keeping the money, but has done it merely for the sake of using it in his trade. He must therefore be charged with interest.” In Perkins v. Baynton, 1 Bro. C. R. 375, the master reported *152] that the administrator had mixed the money *of the estate with his own money, and from time to time had laid out the mixed fund in government securities, and had therefore made some interest, although the master could not report what in particular. The chancellor ordered interest at four per cent, to be charged. In Treves v. Townsend, 1 Bro. C. R. 384, the assignee of a bankrupt received the money of the estate, made no dividend, and 1936Z. remained for several years in his hands. In his answer he said he always kept an equal sum at his bankers ready to answer it. He was ordered to pay interest at five per cent. In Littlehale v. Gascoyne, 3 Bro. C. R. 73, the defendants, executors, had kept large sums of money of the estate in their hands, but it did not appear that they had used them. The chancellor ordered them to pay interest, and said an executor paying or not paying interest, depended on its being necessary for him to keep the money to answer the exigency of the testator’s affairs or not; but that where he held the money longer than was-necessary, he must answer interest.
In reference to these cases, it may be said, the charge of simple interest only was made; and such is the fact; but then it will be observed, it was simple interest on the moneys received by the trustee. They sanction the charge of interest on moneys which have come to his hands and been used or suffered unreasonably to lie uninvested; and it would, I think, be somewhat .difficult to establish any just *181 distinction in principle, between moneys which had been received as part of the capital, or for interest. The case, however, of Raphael v. Bochm, deserves particular attention, because, like the will before us an accumulation was ordered; and because it underwent the examination of three successive chancellors. 11 Vezey, 92. Edward Eaphael disposed of his estate upon certain trusts for his children, and directed that the interest of the portions, or such part as his executors should deem sufficient, should be applied to the maintenance and education of each child respectively, and the surplus of such interest, if any, should be accumulated for the benefit of such child respectively, and make part of his or her estate. The bill was filed against the executor by the children, for an account. A decree was made by Lord Chancellor Loughborough, and the master was ordered to compute interest after the rate of five per centum per annum, on all sums of money, part of the testator’s *estate received by or come to the [*163 hands of the defendant from the time he received the same respectively during the time the same continued in his hands, except the legacies to the executors, and what was expended for maintenance; and in such computation to make half yearly rests. The master having reported an account, exceptions were filed by the executor, and brought to hearing before the chancellor, Lord Eldon. He said, as to the particular fund which is the subject of this suit, the testator expressly directs accumulation during the infancy of his children. This is not, therefore, a case of contract. It is only that the testator places money in the hands of these persons with an express prohibition to keep it in their own hands, and a direction expressly to place it out in some such way that they can accumulate interest. Therefore, by necessary consequence, they keep it against the express direction of the will.” “ If an executor, with an express trust to accumulate, comes with this sort of case, desiring the court not to weigh it in golden scales, but to *182 measure by his general conduct an honest endeavor to execute the trust, this court will not deal out a harsh measure to him.” “ Where there is an express trust to make improvement of the money, if he will not honestly endeavor to improve it, there is nothing wrong in considering him as the principal to have lent the money to himself upon the same terms upon which he could have lent it to-others, and as often as he ought to have lent it, if it be principal; and as often as he ought to have received it and lent it to others, if the demand be interest, and interest upon interest.- If the demand goes further than that, my opinion is, that it is not a wrong principle to go as far; and that this is a species of case in which the court would shamefully desert its duty to infants, by adopting a rule that an-executor might keep money in his hands without being answerable, as if he had accumulated; and if the court cannot find out from the actual circumstances proved, that he-has attempted accumulation, and the charge falls more heavily upon him on that account, the fault is his own, in not shewing what endeavers to improve it he had made.” The exceptions were overruled, and the report confirmed. The case came before Lord Chancellor Erskine, on a petition to rehear the decree; 13 Vez. 407. He said, “ a trustee directed to do an act from which the cestui que trust will *154] derive a *particular advantage, not performing that trust, shall be charged precisely in the same manner as if he had performed it.” He affirmed the decree. The case came again for further directions before Lord Eldon; 13-Fez. 590. He said, “the ground upon which my judgment rests is, that the will imposed upon the executor the duty of accumulating the property.” “ It was also truly stated, that it was impossible to make interest in the way in which, interest was charged upon this defendant; and speaking of interest, properly so called, as distinguished from profit of another description, it certainly is so. But I was struck with this, that though the court ought not, and for the sake- *183 of those for whom executors act, to hold too rigid a rule upon executors, where a fair, anxious and diligent endeavor to do their duty appears; if executors never do any act which by the will they are required to do; never enquire whether there are competent sums to be laid out; never lay out competent sums, if there are any; they cannot complain if upon general principles they are charged with the most rigid rule; for there is no other rule; and the impossibility of applying any other rule, arises not from the inclination of the court, but from the nature of the acts of the party, imposing on the court the duty of taking some broad line.- Therefore, my opinion was, that in the instance of an express trust to accumulate, the court was required to see that the cestui que trust were placed as near as possible in that situation in which they would have been if the trust had been executed.” In Mosely v. Ward, 11 Vez. 581, an executor in trust for infants, who called in the property which was at interest on securities, for no purpose connected with the execution of the will, and treated it as part of his own general funds, was charged with interest on the yearly balances in his hands. In Archdeacon v. Bowes, 13 Price Exch. Rep. 353, a mortgagee in receipt of rents and profits, under a covenant that he should receive them till his debt should be satisfied, having received more than his debt, and retained the overplus in his hands, for a considerable time, was ordered to pay if into court with interest on the amount and on the annual balances in his hands from the time of his receiving notice from a subsequent mortgagee that he should hold him chargable with interest, unless the money received were paid over in aid of other incumbrances. The Chief *Baron, delivering the opinion of the court, said, [*155 “ that W. Wright, as John Wright’s executor, ought to pay interest on the balance in the testator’s hands, and now in his, and also on the balance due from himself from the time when J. Wright received the notice to the present; not *184 ■compound interest; but simple interest, on the gross sum. in their hands, from the end of each year for which the rents were received by them.”
These are some of the leading cases on the subject, from the English books.
Test, however, it be supposed that the state of society •and of business in that country renders necessary,- and therefore justifies a more severe and rigid rule than is suited to our community, let us view some of the principal cases in the American courts.
In Darrel v. Edon, 3 Dess. Rep. 243, Chan. Dessassure says, “ It is the course of the court [the Chancery of South Carolina] to allow. interest'on executors’accounts in their favor, when they appear to have been in advance for the estate, and against the executor where he appears to have had money of the estate in his hands, and which there was no reasonable ground for him to keep by him unemployed.” In Walker v. Bynum, 4 Dess. 356, the same learned chancellor and eminent judge said, “The rule of this court is a plain one: Where an executor, administrator or guardian
receives money, he is bound to pay debts, or to put it oiit to interest on proper security. He is allowed to the end of the year to make up his accounts. Where he receives considerable sums of money, and .neither applies them to pay debts, or to produce interest or revenue of any kind, he is bound to pay interest on the money so received from the end .■of the year.”
In Dunscomb v. Dunscomb, 1 John. C. R. 508, Chan. Kent said, “The only point in this case is, whether the plaintiffs are' entitled to interest on that sum which has lain unproductive for many years in the hands of the defendants. The executors say it has always been kept in readiness to pay to the persons entitled when demanded. Rut this is no sufficient excuse. If they had met with any real doubt or difficulty as to the person authorized to receive, they could have applied to the court for advice, or have brought the *185 money into court. If the money, as we are at liberty to suppose, has been mingled with their own money, *it [*156 has answered the purpose of credit; and the rule is settled, that executors, and all other trustees, are chargeable with interest, if they have made use of the money themselves, or have been negligent either in not paying the money over, or in not investing it, or loaning it, so as to render it productive. The rule is founded in justice and good policy; it prevents abuse and indemnifies against negligence. This was also the rule of the civil law, when the guardian was guilty of negligence in suffering the money of the minor to lie idle. The defendants must in this case account for interest on the above principal sum, and as to the time from which interest is to be computed in such a case of negligence in suffering the money to lie idle, there does not appear to be any absolute rule, and the time must vary according to circumstances. It would be laying too heavy a hand upon executors to charge interest from the moment the money was received. In some cases, executors are allowed a year to look out for some due appropriation of the money, and in other cases it would be unreasonable. Here the executors shew no pains or effort to discharge themselves of the money. I observe that six months was the time allowed in a like case in the civil law to the tutor, to invest the funds; and if the defendants are charged with interest after six months from the time they receive it, it will not be unreasonable in this case, and I shall accordingly decree it.” In Sechiefflin v. Stewart, 1 John. C. R. 620, the administrator had received large sums of money belonging to the estate, which he had not kept separate from his own money, but had used the money in his business, and had loaned large sums thereof to other persons. The master after allowing him from the 8th September, 1803, to 16th July, 1805, for the settlement of the estate without interest, had charged compound interest on the balance found in his hands, or in other words, calculated interest at the end of *186 the first year, and added it to the principal, and on the aggregate cast interest for another year, and so on. The case came on upon exceptions to the report. Chan. Kent said, “ the only real question in the .case is, whether the charge of compound interest be proper. No just complaint-can be made of the time from which the computation of interest began. It was the duty of the plaintiff from that *157] time forward to have made distribution of *the assets, or placed them, in a situation to become productive, and to-accumulate for the heirs. He did neither, but employed the money in his own business or trade, or in making large loans for his own benefit, and as he has not disclosed, as he might have done, to the master, what were the profits of the assets so employed, it appears to me as well on principle as authority, that he is justly chargeable with the interest contained in the report. The only way for the plaintiff to avoid this conclusion was, by fairly disclosing what he had made by the use of the money. It is certain that the allowance of- compound interest is often essential to carry into complete effect the principle of the court, that no profit, gain or advantage shall be derived to the trustee from his use of the trust funds. All the gain must go to the cestui que trust. This is the true equity doctrine. It secures-fidelity and removes temptation; and it is the ground of the- • allowance of annual rests in taking the account where the-executor has used the property, and does not disclose the proceeds.” In Clarkson v. Depeyster, 1 Hopk. 424, Chan. Sanford said, Compound interest had been allowed in a few cases-of gross delinquency, but such interest when computed at a high rate, becomes oppressive and unjust. He directed an enquiry before a master whether the defendant or guardian had made profits from the money of his wards; and that he should be charged with simple interest upon the money remaining in his hands, from which no profits, or profits-less than simple interest, should appear to have been made.
*187 In Fox v. Wilcocks, 1 Binney, 190, Chief Justice Tilghman said, “ To hay down rules by which it may be ascertained in every case whether administrators shall pay interest on balances in their hands, i» impossible. .But I think it may be established as a principle, that interest is payable-where the administrator has been guilty of neglect in not putting out money, or where he has made use of it himself.. Both the act of assembly, and the principles of universal reason, concur in this, and it is agreeable to the authorities cited from the law of England, and the civil law. Still it remains to be decided by the facts in each case, whether the principle is applicable.” He farther observed, “ It lies on him, [the administrator] to shew what has been done with the money, and unless he does shew it in a satisfactory manner, he leaves himself open to the conclusion of [*158-having used it for his own purposes.” In Findley v. Smith, 7 Sergt. & Rawle, 264, on appeal from the Orphans’ Court on the settlement of an executor’s account, Chief Justice Tilghman said, “ In general, the rule adopted by this court,, is to charge the executor with such interest as he lias made, or with due diligence might have made, from the money in his hands.” In Say v. Barnes, 4 Serg. & Rawle, 112, on a settlement of the accounts of a guardian, they had been referred to auditors, who stated the account by striking a balance at the end of every six months, and charging the guardian with interest on the balance then due to the time of the audit; and crediting him on the same principle, when any balance appeared to be due to him; allowing one thousand dollars for contingent expenses. This statement was confirmed by the Orphans’ Court, and came by appeal before the Supreme Court. Chief Justice Tilghman said, “ The governing principle of the auditors was to strike a balance of the money in the hands of the guardian, at the end of every six months, and to charge him with simple interest upon that, making an allowance, however, of one thousand dollars for contingent expenses. It does not seem to me *188 ■that this rule works unjustly or severely, whether the case really was that the money was used by the guardian or ■negligently retained by him. How the fact is we are ignorant. Rut it must not be forgot that no one but he who had the money can shew what became of it. It is objected 'that this rule is unjust, because it might often happen that :good investments could not be obtained in the course of six -months. The answer is fair. Shew us that the money was really lying dead, and we give up the interest. This, the •counsel for the appellee declared in court; and as most people keep their money in bank, there can be little difficulty in shewing what sums remained unemployed, and for what length of time. The only question then is, has he ■been charged for too long a time. Considering the state of ■business in this city during the period when these moneys were received, and in the absence of all testimony which might inform us of the exact truth; considering, too, that the books of the guardian are the proper sources of such testimony, I am of opinion that the rule adopted by the .auditors, was neither severe nor unreasonable.”
*159] *Erom a careful examination of the subject, I am ■brought to the conclusion that the rule adopted by the auditors and sanctioned by the Orphans’ Court, is wrong. What .rule then ought they to have followed ? Our duty, as this case comes here by certiorari, and not by appeal, is to enquire .and decide whether the court below have done right or wrong, and if wrong, to reverse their decree. If we were bound to go further, and adjust the account, the fit rule for the occasion would be the object of anxious research. A sound, general rule, I think, may be easily attained. The executor ■or trustee having faithfully discharged his trust, having exercised prudent care,-just activity, reasonable skill, and proper ■diligence, should be charged with the interest he has made. In the application of the rule, the difficulty arises ; for as ■Chief Justice Tilgham correctly remarks, “every case •depends on its own circumstances.” Rut when the execu *189 tor has not used the money, and suffered it to lie unemployed and idle, or where he cannot, or does not, shew or explain whether it has been employed, or in what manner, what then will be a sound and just rule ? What the rule,, where, as in the present case, the will expressly directs accumulation, and the executor does not shew any attempt to follow its directions, or any unforeseen or uncontrollable obstacles opposing or defeating such attempt ? Where the executor shews no account of the receipts and application of the moneys, and avows that no account of interest was kept, and where it appears that on more than one-half of the productive capital interest was for a series of years annually paid, and with great promptness after it became duo ? In pursuing the enquiry proposed by these questions, certain propositions so evident as to admit of no controversy, ought steadily to be kept in view. It was the duty of the executor to place out at interest, the interest which he received, for the purpose of accumulation. The duty thus incumbent on him, however onerous or inconvenient, was voluntarily assumed, inasmuch as he might have inclined the executor-ship. As he has rendered no account of the disposition of the fund, or of what he actually did receive, he ought to bo charged, as nearly as the same can be ascertained, with all he might have made or received in the exercise of due vigilance .and exertion. Compound interest, I am satisfied, ought to be rejected. In our state, I know of no method whereby so *rapid an accumulation can be produced, [*160 which is fair and feasible, and which does not put at hazard the principal; a risk, however admissible in the transaction, of a man’s own concerns, not to be permitted in the discharge of fiduciary duties. I am, however, of opinion, the execiUor ought to be charged with the annual interest on the principal sum; and allowing six months for receipt and investment after the manner of the civil law, and the opinion of Chan. Kent, which, I think, observation and experience will prove to be a safe period, ho ought to bo charged *190 with interest on the annual amounts of interest from the termination of six months after they respectively fell due, .as long as the capital remained in his hands; charging, however, the interest on the dividends upon the government .stock from the expiration of .six months after the respective times they were received, which are shewn by the evidence in the cause; and deducting at the appropriate times, the payments which were directed by the will to be made, and . which were made. It is well known that at the times the capital, or portions of it, will be paid in, and sometimes for -caution's sake must be called in, and periods of time, of greater or less duration, will elapse before safe investments •can again be made. Failures of punctuality in the payment of interest, will also occur to the most zealous and vigilant trustee. , For all these, the rule I have suggested will, I think, make an adequate allowance. It is neither .simple interest on the one hand, nor compound interest on the other. It is between them and safest. “ In medio .tutissimus ibis.” Simple interest for 21 years on $10,000, as already stated, would make, with the original sum, .$22,600. Compound interest, or making annual rests and turning at the end of each year, the interest of the year into principal, would make $33,995.47. The rule I have suggested would make $29,800. I do not, however, mean to say, that such is the rule which ought to be followed when this account comes to be restated, unless the case is presented under the same aspect; nor do I mean to say which of the executors should be charged with the interest, ■or what proportion should be charged against either. Farther light will, I trust, result from farther investigation. The new circumstances which may be developed, will perhaps require a different computation; and perfect justice be done to the legatees without injury to the individual property of the executors. .
*161] *The rule which I have suggested accords with the principle and spirit and policy of our statute. The eleventh *191 section, Rev. Laws 779, authorizes executors, administrators, trustees or guardians to apply to the Orphans’ Court for direction from time to time in placing out the money of minors, as to time, manner and security, and saves them from loss in case such security taken bona fide and without fraud shall prove insufficient, and enacts that “ it shall be the duty of executors, administrators, trustees and guardians in cases where the minors’ estates may bo materially benefitted thereby to make application to the Orphans’ Court for such leave and direction, and in case they shall neglect so to do, they shall be accountable for the interest that might have been made thereby ; but if no person who may be willing to take the said money at interest giving such security, can he found by the said executors, administrators, trustees or guardians, nor by any other friend or friends of such minors, then the said executors, administrators, trustees or guardians shall in such cases be accountable for the principal money only until it can be put out at interest as aforesaid; provided nevertheless, that in any case where executors, administrators, trustees or guardians shall make use of the money of minors which shall come to their hands, they shall be accountable not only for the principal hut for the interest thereon.” Here then is a wise direction, a safe guide and a sufficient indemnity for those who have the management of the funds of minors. The rule I have suggested agrees in principle with the doctrine stated by Hoffman in his recent treatise on the office and duties of masters in chancery, who after an able review of the subject .says, “ Decrees against executors or other trustees charging them with interest upon sums from the moment of possession are severe, and only made in cases of marked misconduct or employment in trade, when it may reasonably be supposed the money is immediately turned to a profit. The usual course where the party is charged with interest is to direct it to be computed upon annual balances. In such a case the most convenient mode is to state the account of *192 each year separately, and carry the interest on its balance to the date of the report or to some other proper period, as the date of the payment of a large part of the debt into court or otherwise.”
The rule I have suggested is conformable also to the *162] doctrine *of Chancellor Williamson in the case of Taylor and others v. Thomas and others, which came before him on exceptions to the account of an executor as reported by a master. In the extract from his opinion with which I have been furnished, he says, “ The point raised by this exception is whether the master has charged the defendant with a sufficient amount of interest. The rule is now perfectly settled in the English books, that executors and administrators are chargeable with interest on balances which they ought to have paid over or invested so as to-have made productive, as well as in cases where they have made use of money for their own private purposes. Every reasonable and proper allowance ought to be made for an executor when he has not retained the assets in his hands for his own benefit, but every principle of sound policy and justice requires that if persons will voluntarily accept such a trust, it must be required of them to use due diligence in transacting the business of the estate, and in the settlement of their accounts, and not to suffer infants to be injured by their negligence: — And the question whether an executor shall be charged with interest on the assets retained in his hand, turns upon this, whether the fund has been kept for any other purpose than that of discharging the growing claims upon it.” The chancellor in his opinion appears to condemn, I think very properly, compound interest and remarks that the distinction to be found in some of the-cases of the English chancery, charging under different circumstances, different rules of interest, has not been adopted or acted upon in Hew Jersey; but he maintains explicitly that the executor ought to be charged with interest on balances which he ought to have invested so as to make- *193 productive. Can we then hesitate to understand what he would do and approve in a case where the executor is expressly required by the will to invest and make productive the annual interest; where the annual proceeds when received by the executor, are quite as much the property jof the cestui que trust or infants, as the principal moneys; where there can be no claims on the fund, and, consequently, it cannot be kept for the purpose of discharging growing claims upon it; and where the executor having actually received moneys for interest on the estate, and omitting to shew how they have been disposed of, or to render any account of them, must, in the view of the utmost liberality, be supposed either to have suffered *them to lie idle, or to have used them for his own [*163 private purposes. No doubt on these points can be entertained, when it is known that he followed up the opinion to which I have referred, by sending the account excepted to back to a master, with directions “ to ascertain the yearly balances in the hands of the said executor, and to enquire into the necessity óf his having retained those balances to answer the exigencies of the estate, and if no such exigency existed, to compute interest thereupon against him.”
Upon the argument at the bar, objections against several items of the account as stated, were discussed at large. It seems, however, unprofitable to examine them; as upon further investigation, the facts respecting them may be bettor understood and developed, and presented under a different shape; even the facts which establish the competency or incompetency of Dinah Voorhees, the widow, to give evidence, may be materially varied.
On the whole, I am of opinion, the decree of the Orphans’ Court ‘ should be reversed, and the case remitted to that court to proceed thereon agreeably to law.
Ford, J., and Drake, J., concurred.